IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KENNETH E. BROWN,<br><br>               Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration[1],<br>               Defendant. | REPORT & RECOMMENDATION<br><br>Case No. 2:12-cv-169-DN-BCW<br><br>District Judge David Nuffer<br><br>Magistrate Judge Brooke Wells |

District Judge David Nuffer referred this case to Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Plaintiff Kenneth E. Brown seeks judicial review of the determination of the Commissioner of the Social Security Administration, which denied his application for Social Security Disability Insurance and Supplemental Security Income.[3]

After careful consideration of the written briefs, the administrative record and relevant legal authorities, the Court has determined that oral argument is unnecessary and issues the following Report and Recommendation **RECOMMENDING** that the District Court **REVERSE AND REMAND** the decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin ("Commissioner") became the Acting Commissioner of the Social Security Administration. Accordingly, she has been automatically substituted for Michael J. Astrue as the Defendant in this action. See 42 U.S.C. § 405(g)("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); F.R.C.P. 25(d)("An action does not abate when a public officer who is a party in an official capacity dies, resigns or otherwise."); docket no. 24.
[2] Docket no. 16.
[3] While briefing in the instant appeal was pending, the Social Security Administration issued a favorable decision as to Plaintiff's disability. See Exh. 1, docket no. 23. Because Plaintiff argues this subsequent SSA decision has an effect on the present appeal, it will be discussed herein.

## BACKGROUND

A.   **Procedural History**

Plaintiff, Kenneth Brown, who was born on March 27, 1986,[4] filed an application for Disability and Disability Insurance Benefits on September 8, 2008.[5] On December 23, 2008, Plaintiff also filed an application for Supplemental Security Income.[6] In both of his applications for benefits, Plaintiff alleged an onset date of disability of April 1, 2007.[7] Plaintiff meets the insured requirements through June 30, 2009.[8]

Plaintiff's claims were initially denied April 14, 2009, and upon reconsideration on June 2, 2009.[9] Plaintiff then requested an administrative hearing.[10] A hearing before an Administrative Law Judge ("ALJ") was held on September 22, 2010.[11] On November 15, 2010, the ALJ issued a written decision denying Plaintiff's claims for benefits.[12] Plaintiff then appealed the denial to the Social Security Appeals Council. The Appeals Council denied a review of the ALJ's decision on January 18, 2012.[13] Pursuant to 42 U.S.C. § 405(g), this appeal followed.

On December 28, 2012, during the briefing period in the instant case, the same ALJ that denied Plaintiff's previous application for benefits found Plaintiff disabled.[14] In his subsequent application for benefits, Plaintiff alleged an onset date of disability of March 22, 2011.[15]

---

[4] Tr. at 27.
[5] Tr. at 16.
[6] Id.
[7] Id.
[8] Id.
[9] Tr. at 16.
[10] Id.
[11] Id.
[12] Tr. at 16-34.
[13] Tr. at 1.
[14] See Exh. 1, docket no. 23.
[15] Id.

B.  **Medical History**[16]

At the outset the Court notes the Administrative Record contains voluminous records detailing Plaintiff's psychological treatment beginning in 1994.[17] Throughout the record there are multiple references to the fact that Plaintiff's psychological treatment began after his mother abandoned him at the age of six.[18] Before he was abandoned, Plaintiff was both physically and sexually abused.[19] He was in the state's custody living in residential treatment facilities and foster homes until he was adopted at the age of 16.[20] Therefore, many of the medical records contained within the file are from Primary Children's Hospital and its Residential Treatment Program.

Plaintiff has been diagnosed with bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), anxiety, and reactive attachment disorder.[21] Many of these diagnoses were made in Plaintiff's childhood and early adolescence.[22] Over the years, Plaintiff has been prescribed a variety of psychotropic medications including Lithium, Effexor, Seroquel, Imipramine, Clonazepam, Prozac, and Noritriptyline.[23] However, Plaintiff reports he stopped taking medications in his teenage years. In addition, in 1998 and again in 2002, Plaintiff had complaints relating to his back.[24] A 2002 x-ray revealed "mild disc space narrowing L5-S1 and thoracolumbar scoliosis."[25]

---

[16] The Court finds that the parties have adequately articulated Plaintiff's medical history in their briefs. Accordingly, the Court will only summarize the relevant facts in order to maintain Plaintiff's privacy, to provide context to Plaintiff's impairments and address the issues raised.
[17] Tr. at 86-1946.
[18] Tr. 984, 1267, 1908.
[19] Tr. at 1908.
[20] Id.
[21] Tr. at 326.
[22] Tr. at 320, 326, 1891-1903.
[23] Tr. at 326, 877, 945, 1002, 1122, 1941-1942,
[24] Tr. at 945, 1897.
[25] Tr. at 1897.

After turning 18, Plaintiff worked sporadically and spent some time in jail for offenses mostly stemming from drug use.[26] He has two children, one that was placed in foster care and a daughter that he cares for.[27] Most recently, the Utah Department of Workforce Services referred Plaintiff to Silverado Counseling Services for mental health treatment.[28] Although Plaintiff's attendance was sporadic and he cancelled many appointments, on February 2, 2010, Mark Weisbender, a licensed clinical social worker at Silverado diagnosed Plaintiff with PTSD, anxiety, and relationship problems.[29] Mr. Weisbender also indicated Plaintiff might have depression and substance abuse disorder. He gave Plaintiff a GAF Score of 48.[30]

    C.    **Hearing Testimony-September 22, 2010.**

At the hearing before the ALJ, testimony was received from Plaintiff, a medical expert, Dr. Ronald Houston, Ph.D. and a vocational expert, John F. Hurst.[31]

Dr. Houston testified that he had reviewed the entire record, including the "copious Primary Children's notes."[32] Dr. Houston opined that drugs and alcohol were "highly material to the case"[33] and stated that "in the absence of drugs and alcohol, there's a high probability that the severity of [Plaintiff's symptoms would] attenuate and productivity should improve."[34]

Plaintiff testified that he left his last job because sometimes he just couldn't go.[35] Plaintiff testified he and his young daughter live with his adoptive father and the father's ex-mother-in-law.[36] His daily activities consist of caring for his young daughter and spending time

---

[26] Tr. at 23.
[27] Tr. at 70, 326.
[28] Tr. at 24.
[29] Tr. at 1928.
[30] Id.
[31] Tr. at 42.
[32] Tr. at 46.
[33] Tr. at 46-47.
[34] Tr. at 47.
[35] Tr. at 63-64.
[36] Tr. at 59.

4

on the internet.[37]  Specifically as to his daughter's care, Plaintiff testified that he prepares her meals, bathes her, dresses her, takes her to the park, watches television with her and reads to her.[38]

When asked about his substance abuse, Plaintiff testified that he had recently used both alcohol and marijuana in order to alleviate his insomnia.[39]  Plaintiff admitted to using marijuana regularly since he went off his psychotropic medications in his teenage years.[40]  Plaintiff further testified that in addition to marijuana and alcohol, his past drug use included cocaine, methamphetamine, acid, and mushrooms.[41]  Plaintiff admitted that his drug use has caused him to have problems with the law and enter and fail to complete drug rehabilitation.[42]

Plaintiff further testified that he doesn't go out to movies or restaurants and shops for groceries late at night in order to avoid as many people as possible.[43]  Plaintiff testified that he hears voices and does not have the ability to concentrate long enough to write a letter.[44]  Plaintiff does not see much of a future for himself, doesn't feel good about himself and has fears of dying.[45]

Dr. Houston then testified and identified Plaintiff's specific work-related mental limitations with and without the presence of drugs and alcohol.[46]  The vocational expert, Mr. Hurst, testified that Plaintiff's work experience included jobs as a janitor, roustabout on an oilrig, food prep helper, fast food worker, warehouse worker, and telemarketer.[47]  Based on Dr.

---

[37] Tr. at 57-59.
[38] Id.
[39] Tr. at 66.
[40] Tr. at 72.
[41] Tr. at 68-69.
[42] Tr. at 69-71.
[43] Tr. at 61.
[44] Tr. at 62.
[45] Tr. at 61-62.
[46] Tr. at 73-75.
[47] Tr. at 75.

Houston's testimony, the vocational expert was presented with hypotheticals and opined that with Plaintiffs' limitations, he could perform jobs as a medical assembler of plastics, small parts assembler or laundry folder.[48]

### D. ALJ's Written Decisions

### 1. November 15, 2010 Decision

In the ALJ's written decision dated November 15, 2010, the ALJ found at Step One of the required sequential evaluation process[49] that Plaintiff had not engaged in substantial gainful activity since April 1, 2007, the alleged onset date.[50] At Step Two, the ALJ found Plaintiff had the following severe impairments: (1) episodes of mood disorder; (2) anxiety-related disorder; (3) personality disorder; and (4) polysubstance abuse.[51] Citing review of Plaintiff's medical records, specifically Exhibit 31F, page 8, the ALJ found claimant's "mild back problems with scoliosis and disk space narrowing" to be "non-severe."[52] At Step Three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments contained within the regulations.[53] Specifically, the ALJ found "claimant's mental impairments, including substance use disorders, do not meet or equal Listings 12.04, 12.06, or 12.09.[54] In making this finding, the ALJ adopted the opinion of the independent medical expert, Dr. Houston, who has a Ph.D. in clinical psychology[55] and testified that Plaintiff's combined mental impairments neither meet nor

---

[48] Tr. at 80.
[49] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation process for determining if a claimant is disabled).
[50] Tr. at 19.
[51] Id.
[52] Id.
[53] Id.
[54] Tr. at 20.
[55] Tr. at 1913.

equal the criteria for the listings.[56] Further, that ALJ stated Dr. Houston was the only medical source who reviewed the entire record and therefore the ALJ found he "had a better foundation for his opinions than others in the records, including the state agency consultants who nevertheless reached the same conclusion that the claimant's impairments were not of listing level severity."[57] Plaintiff was examined by some of these consultants; including Dr. Peter Heinbecker, M.D.[58] whose opinion dated April 5, 2009 was given little weight by the ALJ because the ALJ found Dr. Heinbecker's evaluation to be inconsistent with the limited medical evidence of record, did not mention the review of medical records and was apparently based in large part upon Plaintiff's statements. Dr. Heinbecker gave Plaintiff a GAF score of 40.[59] The ALJ opined that Dr. Heinbecker's evaluation was inconsistent with his own observations and with the testimony of Dr. Houston. The ALJ also noted that Plaintiff "produced no medical source opinion from any treating provider during the period relevant to this application stating that he was incapable of competitive work activity."[60]

Next, the ALJ found the Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all <u>exertional</u> levels, but with several nonexertional limitations which have the overall effect of limit[ing] him to unskilled work."[61] Further,

**without subtracting out the effects of substances**,

- The claimant is mildly limited (10% or less overall restricted) in the ability to understand, remember and carry out detailed instructions.
- The claimant has moderate limitation (1/3 or less overall restriction) in the ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to complete a normal workday

---

[56] Tr. at 20.
[57] Tr. at 21.
[58] The Court notes that Dr. Heinbecker is a medical doctor. However, in his Response brief, Defendant states that Dr. Heinbecker is a "psychologist." This is an error. See docket no. 22 at p. 3.
[59] Tr. at 32.
[60] Tr. at 26.
[61] Tr.at 22.

- within interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length or rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriately [sic] behavior and standards of neatness and cleanliness; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others.
- The claimant has marked limitation (2/3 or less overall restriction) in the ability to accept instructions and to respond appropriately to criticism from supervisors.

In making this finding, the ALJ discussed Plaintiffs' treatment history and the medical records produced by Plaintiff. Specifically, the ALJ stated:

> [u]nder the Regulations, the relevant period for a Title II claim is the period between the alleged onset date and the date last insured. Therefore, the relevant period of this application began on April 1, 2007, the alleged onset date and the date first insured. In support of his application, the claimant produced records of medical treatment from 1994 through 2010. Records of treatment prior to the alleged onset date are not relevant to this decision and are not included in the discussion.
>
> …
>
> The claimant produced very little medical records during the period relevant to this application. Apart from mental health screening records from Salt Lake County Jails he produced no record of medical or mental health treatment of any kind between 2003, when he was 17 years old and 2009 when he was age 23.[62]

The ALJ also summarized Plaintiff's evaluations at the Salt Lake County Jail and appointments for counseling ordered by the Utah Department of Workforce Services. The ALJ summarized one of these visits with Mr. Weisbander, a licensed clinical social worker, in 2010 in which the note from the visit reads: "Lawyer in his disability case…advised…he cannot earn more than $900.00/Mo, so he does not expect to work more than 20/week. Feels that he can do this…"[63]

---

[62] Tr. at 22-23.
[63] Tr. at 24.

8

The ALJ noted that Plaintiff "has some remote history of medical treatment for mental impairments during childhood"[64] but again noted that she "neither discussed nor considered the records of medical treatment during the claimant's childhood. These records document treatment that occurred several years prior to the alleged onset date and there is a lengthy unexplained gap in treatment between those records and the current application."[65]

At Step Four, the ALJ found Plaintiff has no past relevant work.[66] At Step Five, the ALJ found "if the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform."[67] Therefore, "[b]ecause the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g)), the claimant's substance use disorders is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision."[68]

## 2. December 28, 2012 Decision[69]

The same ALJ who previously denied Plaintiff's applications for benefits found Plaintiff disabled on December 28, 2012. Specifically, the ALJ found at Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. At Step Two, the ALJ found Plaintiff to have the following severe impairments: (1) Attention Deficit/Hyperactivity Disorder, (2) Mood Disorder; (3) Anxiety Disorder; and (4) Personality Disorder. At Step Three, the ALJ found these impairments or a combination of these

---

[64] Tr. at 26.
[65] Tr. at 20.
[66] Tr. at 33.
[67] Id.
[68] Tr. at 34.
[69] All citations and reference for this subsequent disability determination were take from the ALJ's opinion dated December 28, 2012 that were attached as an exhibit to Plaintiff's Reply Brief, docket no. 23.

9

impairments do not meet the listed impairments contained within the regulations. The ALJ then found Plaintiff to have the following Residual Functional Capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

- The claimant has mild mental limitations, meaning 10% or less overall restriction, which means [h]e can mentally perform most basic work activity, e.g., the claimant has the ability and aptitude necessary to do most jobs (20 CFR 416.9721(b); including maintaining regular attendance, making simple work decisions, responding appropriately to changes in work setting, traveling in unfamiliar places or using public transportation, setting realistic goals or to make plans independently of others, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, understanding, remember, and carrying out detailed instructions, and performing activities within a schedule; and
- The claimant has moderate mental limitations, meaning 10% to one-third overall restriction, working in coordination with or in proximity to others without being distracted by them, interacting appropriately with the general public, and sustaining an ordinary routine without special supervision.

The ALJ then noted that the medical evidence revealed treatment for various mental conditions and summarized the findings of Marilyn Little, APRN and Kathy D. Barnett, Ph.D., LLC who both provided opinions as to Plaintiff's condition. However, the ALJ did not indicate what weight, if any she gave to these opinions. Rather, the ALJ indicated that she gave "little weight" to the opinions of the State agency medical consultants "because other medical opinions are more consistent with the record as a whole, and new evidence received at the hearing level supports greater limitations."[70] The ALJ then found Plaintiff to be credible. At Step Four, the ALJ found Plaintiff had no relevant past work. Lastly, at Step Five, the ALJ "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." Thus,

---

[70] Id. at p. 5.

the ALJ found from March 22, 2011 going forward, Plaintiff is eligible for Social Security benefits.

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether her findings are supported by "substantial evidence" and whether the correct legal standards were applied.[71] If supported by substantial evidence, the findings are conclusive and must be affirmed.[72] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[73] Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[74] Moreover, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record."[75]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[76] In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[77] However, the reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[78] Further, the Court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[79] Lastly, "[t]he failure to apply the correct legal

---

[71] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).
[72] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[73] Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996).
[74] Zolanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[75] Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).
[76] Id.
[77] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).
[78] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).
[79] Lax, 489 F.3d at 1084 (quoting Zolanski, 372 F.3d at 1200).

standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[80]

## DISCUSSION

Plaintiff contends he is disabled due to a combination of impairments including bipolar disorder, panic disorder, spinal disk space narrowing and thoracolumbar scoliosis. Plaintiff raises the following issues on appeal: (1) the ALJ erred by failing to consider all of Plaintiff's mental and physical impairments; (2) The ALJ failed to consider Plaintiff's longitudinal medical history; (3) The ALJ's findings were unsupported and based on medical testimony which was inconsistent with the file, and inconsistent with treating physician opinions; (4) The ALJ erred by performing a faulty credibility analysis and failing to consider reasons for Plaintiff's noncompliance; and (5) the subsequent favorable decision should be considered new and material evidence, requiring remand for further factual consideration, having commenced at or near the time Plaintiff was found not disabled by previous application.

The Court finds issue two to be dispositive and requires remand. Therefore, the Court will not address the Plaintiff's other arguments. However, the Court will address the effect of the subsequent favorable decision and the effect on the case at hand.

A.  **Subsequent Favorable Decision & Amended Opening Brief**

As a preliminary matter, the Court will address the effect if any, the Plaintiff's subsequent favorable decision may have on this appeal. Procedurally, Plaintiff decided to attach the subsequent favorable decision to his Reply Brief[81] and also filed an Amended Opening Brief discussing the subsequent favorable decision, without leave of the Court.[82] Thereafter, the Commissioner sought leave to file a Sur-Reply in order to discuss the subsequent favorable

---

[80] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).
[81] Docket no. 23.
[82] Docket no. 26.

decision. The Court granted this request in order to give the Defendant an opportunity to respond to Plaintiff's new arguments and the additional evidence presented.

In his Reply brief, Plaintiff argues that this later decision by the ALJ finding Plaintiff disabled is "new and material evidence" and requires remand. Citing law from the 9th Circuit, Plaintiff contends the ALJ's finding in her second decision, but not in her first decision, that Plaintiff's bipolar disorder is a severe impairment constitutes new and material evidence "due to the nature of the bipolar disorder, there is a reasonable possibility that Mr. Browns' bipolar disorder was a severe impairment during the period of the his first application."[83]

On the other hand, Defendant argues that because Plaintiff selected March 22, 2011 as this alleged onset date for disability, it is implied that the evidence in the ALJ's subsequent favorable decision could not establish disability prior to that date and therefore is not relevant. Defendant further argues that remand is not appropriate because the subsequent favorable decision involved a separate claim for benefits, with a different combination of severe impairments; different RFC and different evidence cited than in the ALJ's first opinion. Therefore, Defendant argues Plaintiff has not demonstrated that new, material evidence has been shown that would warrant a remand for reconciliation of the two opinions.

While not specifically argued by Plaintiff, it appears Plaintiff is requesting a remand under sentence six of 42 U.S.C. § 405(g) which states:

> The court may …at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.[84]

Thus, Sentence Six allows the Court to remand the case to the agency without ruling on the merits when "new and material evidence comes to light, and there is good cause for failing to

---

[83] Amended Opening Br., docket no. 26 at p. 8.
[84] 42 U.S.C. § 405(g).

incorporate such evidence in the earlier proceeding.[85] However, Courts have found that a subsequent favorable decision on its own is not sufficient by itself, to warrant a sentence six remand.[86] In addition, at least one Court in this district has held "[w]ithout a showing that the subsequent favorable decision was based on new material evidence, and that Plaintiff had good cause for not incorporating the new evidence into the record before the initial ALJ, the court cannot remand a case under sentence six."[87]

The Court believes the reasoning in Estes to be persuasive and for the reasons enumerated in that opinion, recommends that the District Court not remand this case under sentence six based upon the subsequent favorable decision. First, despite the subsequent favorable decision, there is no overlap in dates of Plaintiffs' disability status. Plaintiff's application for benefits dated September 8, 2008 alleged an onset date of disability of April 1, 2007. In that application, Plaintiff met the insured status requirements through June 30, 2009 and the ALJ issued her opinion denying benefits on November 15, 2010. Plaintiff then filed for benefits again and amended his alleged onset date to March 22, 2011. The ALJ's opinion finding Plaintiff to be disabled was authored on December 28, 2012. Therefore, there is a four-month gap between the date of the ALJ's 2010 decision denying benefits and Plaintiff's amended onset date in his next application. Moreover, there is no indication that the ALJ relied upon the same evidence in the second written opinion than she did in the first opinion. In fact, the ALJ cites two different treating medical sources Marilyn Little, APRN and Kathy D. Barnett, Ph.D., LLC who authored opinions that were not included in the Plaintiff's previous application.

---

[85] Nguyen v. Shalala, 42 F.3d 1400, 1403 (10th Cir. 1994). See also 20 C.F.R. § 404.970 (evidence is new and material if it relates to the period on or before the date of the ALJ's decision.)
[86] See
[87] Estes v. Astrue, No. 1:10-cv-0015, 2012 WL 423372, at *2 (D. Utah, Feb. 8, 2012).

The Court therefore recommends that the Amended Opening Brief be stricken and not considered based up on the lack of overlap between the ALJ's opinion at issue and the subsequent favorable ruling. Further, a remand is not appropriate under sentence six because the second opinion is not new or material and Plaintiff has failed to demonstrate the requisite good cause for failure to incorporate such evidence into the record. Therefore, the remainder of the undersigned's recommendation will focus on the arguments related to one issue originally raised in Plaintiff's Opening Brief.[88]

B.    **Rejection of Longitudinal Medical History**

Plaintiff argues that the ALJ erred by failing to consider all of the claimant's mental and physical impairments because the ALJ did not consider Plaintiff's medical records prior the alleged onset date nor after the date last insured.

Defendant on the other hand, argues that the ALJ did not err by not considering as relevant the entire medical record. For support, Defendant cites 20 C.F.R. 404.1512 (c) which states: "[y]ou must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."[89] Defendant further argues the ALJ did not err because in the 10th Circuit, "an ALJ is required to consider all the evidence in a case record [but] she is not required to discuss every piece of evidence."[90] Defendant's argument therefore rests upon the belief that because the ALJ in this case apparently reviewed all the evidence but did not discuss it, remand is not required.

---

[88] Docket no. 12.
[89] 20 C.F.R. 404.1512(c).
[90] Docket no. 22 at p. 9 (citing <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In her opinion, the ALJ states "[u]nder the Regulations, the relevant period for a Title II claim is the period between the alleged onset date and the date last insured."[91] "Records of treatment prior to the alleged onset date are not relevant to this decision and are not included in the discussion."[92] The parties have not cited nor has the Court been able to find a regulation that explicitly states this proposition. However, the Regulations do in fact contemplate the need for these long-term records.[93] Specifically, Section D subparagraph 1 under 12.00 Mental Disorders states:

> *Need for longitudinal evidence*. Your level of functioning may vary considerably over time. The level of your functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of your impairments(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time. Thus, **it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity.**[94]

Thus, this Regulation supports a finding that longitudinal medical evidence outside of the alleged onset date and date last insured is relevant.

In addition, the language of 20 C.F.R. § 404.1512 can be viewed to support a finding that medical evidence outside of the alleged onset date and date of last insured is relevant. 404.1512(d) states in relevant part:

> Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history <u>for at least</u> the 12 months preceding the month in which you file your application <u>unless there is a reason to believe that development of an earlier period is necessary</u> or unless you say that your disability began less than 12 months before you filed your application.[95]

---

[91] Tr. at 22.
[92] Id.
[93] See 20 C.F.R. Ch. 11, Pt. 404, Subpt. P, App. 1, 12.00(D)(2).
[94] Id. (emphasis added).
[95] 20 C.F.R. § 404.1512(d)(emphasis added). See also 20 C.F.R. § 404.1512(d)(2)("By 'complete medical history' we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application. If you say that your disability began less than 12 months before you filed your application, we will develop your complete medical history beginning with the month you say your disability began <u>unless we have reason to be believe your disability began earlier.</u>")(emphasis added).

16

The Court was able to locate one Court opinion that evaluates the language in 404.1512(d) and evidence that is presented outsde of the "relevant period." In <u>Perez v. Commissioner of Social Security,</u>[96] a recent case from the United States District Court for the Middle District of Florida, the court found evidence before the alleged disability onset date is relevant to a disability determination. The Court reasoned

> [t]he sequential evaluation process requires the ALJ to first assess whether a claimant's alleged impairments lasted or can be expected to last for a continuous period of not less than 12 months. This evaluation necessarily requires that the ALJ consider medical evidence before the alleged disability onset date to determine when the impairment began.[97]

Therefore under the reasoning of <u>Perez</u>, Plaintiff's longitudinal medical history is relevant. The Court finds this case to be persuasive.

The Court acknowledges that the 10th Circuit has stated on many occasions that an ALJ is not required to "discuss every piece of evidence."[98] However, the Court believes that the ALJ's opinion in this case is unsupported because the ALJ explicitly found that Plaintiff's medical evidence before the alleged onset date was <u>not relevant</u> and did not include it in the discussion of Plaintiff's impairments detailed in the lengthy medical history.[99] Accordingly, based upon the language of 404.1512(d) and the Court's analysis in <u>Perez</u>, the Court believes that evidence presented that pre-dates the alleged onset date to be relevant—especially in cases of long-term mental illness as is the case here.

---

[96] No. 6:12-cv-133-Orl-31KRS, 2014 WL 444233 at * 7 (M.D.Fl. Feb. 3, 2014)(unpublished).
[97] <u>Id</u>.
[98] <u>Wall v. Astrue</u>, 561 F.3d 1048, 1067 (10th Cir. 2009)(citing <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1303)(10th Cir. 2007).
[99] <u>See</u> Tr. at 22 ("Records of Treatment prior to the alleged onset date **are not relevant** to this decision and are not included in the discussion."); Tr. at 26 ("The claimant produced no medical source opinion from any treating provider during the period relevant to this application stating that he was incapable of competitive work activity.") Tr. at 30 ("As noted above, the Administrative Law Judge neither discussed nor considered the records of medical treatment during the claimant's childhood, Exhibits 1F, 11F-29F, and 31F. These records document treatment that occurred several years prior to the alleged onset date and there is a lengthy, unexplained gap in treatment between those records and the current application.").

Additionally, the Court agrees with Plaintiff that the ALJ improperly "cherry picked" the record.[100] This is evidenced by the contradictions in the ALJ's opinion, which reveal that she did in fact consider and found as relevant medical records outside of the "relevant period" when these records supported a finding of non-disability. For example, in finding that the Plaintiff's alleged issues with his back were not "severe" impairments, the ALJ's opinion states that the ALJ relied on Exhibit 31F, page 8.[101] Upon review of this record, it is clear that it is dated October 21, 2002—many years before the alleged onset date. The ALJ further discusses evidence from before Plaintiff's alleged onset date and after Plaintiff's date of last insured when she analyzes Plaintiff's records from the Salt Lake County Jail dated 2005 to 2007 and records from Mr. Weisbender at Silverado Counseling whose records discuss evaluations in 2010.[102]

The record further contradicts the ALJ's statement that Plaintiff "…has some remote history of medical treatment for mental impairments during his childhood."[103] To the contrary, Plaintiff's medical treatment for mental impairments is anything but "remote." Plaintiff has presented over a thousand pages of evidence that documents treatment for mental illness. These records date from Plaintiff's childhood and discuss diagnoses that are the same and/or similar to the severe impairments found by the ALJ. Although the ALJ adopts the opinion of Dr. Houston who reviewed the entire record, the Court finds that the ALJ has not adequately shown that these records were not relevant to Plaintiff's disability determination and should have discussed and considered them.

Therefore, the Court finds that the ALJ's finding that Plaintiff's medical records that fall outside of the "relevant period" are not relevant and should not be discussed nor included in the

---

[100] Cf. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2007)("Nor is the ALJ 'entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.'")
[101] Tr. at 1897.
[102] See Tr. at 23-26, 1917-1935.
[103] Tr. at 26.

analysis of Plaintiff's disability not to be supported by substantial evidence. The Court has not been presented with any clear evidence that the regulations hold what the ALJ purports. To the contrary, it is reasonable that Plaintiff's long-term mental illness, which has been present since childhood is relevant to a determination as to whether Plaintiff is eligible for Social Security benefits and the Regulations and case law support this finding. The undersigned therefore recommends that remand be ordered in order for the ALJ evaluate the entire record or adequately explain the regulations she relied upon to support the conclusion that evidence of long-term mental illness is not relevant because it pre- or post-dates the alleged onset date and the date last insured.

## CONCLUSION & RECOMMENDATION

For the foregoing reasons, the undersigned **HEREBY RECOMMENDS** that the Commissioner's decision in this case be **REVERSED AND REMANDED** for further consideration.

## NOTICE

Copies of this Report and Recommendation are being sent to all parties who are hereby notified of their right to object.[104] Pursuant to 28 U.S.C. § 636(b)(1), a party may file objections to the magistrate judge's report, for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection. Failure to object may constitute waiver of objections upon subsequent review.

---

[104] See 28 U.S.C. § 636(b)(1); F.R.C.P. 72(b).

DATED this 11 March 2014.

_____
Brooke C. Wells
United States Magistrate Judge